# EXHIBIT A



Your Missouri Courts

ase .net

Search for Cases by: [Select Search Method...        ▼]

| Judicial Links | eFiling | Help | Contact Us | Print | GrantedPublicAccess    Logoff BOOKERSHAW |

## 2022-CC00473 - KELLEN JACQUIN ET AL V NESTLE PURINA PETCARE CO (E-CASE)

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/Execution |

This information is provided as a service and is not considered an official court record.

**Click here to eFile on Case**
Click here to Respond to Selected Documents

Sort Date Entries: ● Descending  ○ Ascending

Display Options: [All Entries    ▼]

---

**03/24/2020** ☐ **Jury Trial Scheduled**
  **Scheduled For:** 09/08/2020;  9:00 AM ;  REX M BURLISON;  City of St. Louis

**03/17/2020** ☐ **Corporation Served**
  Document ID - 20-SMCC-1244; Served To - NESTLE PURINA PETCARE CO.; Server - ; Served Date - 04-MAR-20; Served Time - 00:00:00; Service Type - Special Process Server; Reason Description - Served; Service Text - RECEIVE BY B LOVE/ AUTH TO ACCEPT

  ☐ **Notice of Service**
  Memorandum to Clerk Regarding Return of Service; Return of Service; Costs.
    **Filed By:** DANIEL JOHN ORLOWSKY
    **On Behalf Of:** KELLEN JACQUIN, KRISTEN SPARKS, GREGORY WATERS

  ☐ **Entry of Appearance Filed**
  Entry of Appearance as Co-Counsel; Electronic Filing Certificate of Service.
    **Filed By:** ADAM MARTIN GOFFSTEIN
    **On Behalf Of:** KELLEN JACQUIN, KRISTEN SPARKS, GREGORY WATERS

**03/03/2020** ☐ **Summons Issued-Circuit**
  Document ID: 20-SMCC-1244, for NESTLE PURINA PETCARE CO..

**03/02/2020** ☐ **Filing Info Sheet eFiling**
    **Filed By:** DANIEL JOHN ORLOWSKY

  ☐ **Note to Clerk eFiling**
    **Filed By:** DANIEL JOHN ORLOWSKY

  ☐ **Motion Special Process Server**
  Request for Appointment of Process Server.
    **Filed By:** DANIEL JOHN ORLOWSKY
    **On Behalf Of:** KELLEN JACQUIN, KRISTEN SPARKS, GREGORY WATERS

  ☐ **Pet Filed in Circuit Ct**
  Class Action Petition for Damages.
    **Filed By:** DANIEL JOHN ORLOWSKY

  ☐ **Judge Assigned**

---

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

| | | |
|---|---|---|
| KELLEN JACQUIN, | ) | |
| | ) | |
| KRISTEN SPARKS, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GREGORY WATERS, on behalf of themselves | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Cause No. |
| | ) | |
| vs. | ) | Division: |
| | ) | |
| NESTLE PURINA PETCARE COMPANY, | ) | |
| Serve:  Registered Agent | ) | **JURY TRIAL DEMANDED** |
| CT COPORATION SYSTEM | ) | |
| 120 South Central Avenue | ) | |
| Clayton, MO 63105 | ) | |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION PETITION FOR DAMAGES

COME NOW Plaintiffs Kellen Jacquin, Kristen Sparks, and Gregory Waters, (hereinafter referred to as "Plaintiffs"), on behalf of themselves and all others similarly situated in the State of Missouri, through their attorneys, and bring this action against Defendant Nestle Purina PetCare Company (hereinafter referred to as "Defendant" or "Purina"); and, upon information and belief, except as to the allegations that pertain to themselves, which are based upon personal knowledge, allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this action on their own behalf and as representatives of a class of persons consisting of all Missouri citizens who purchased Purina Products for personal, family, or household purposes.

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

2.     Defendant develops, manufacturers, markets, distributes, and sells a variety of personal, family, or household products, including:

- Purina Alpo Prime Classics;

- Purina Beneful Healthy Weight;

- Purina Beneful Originals Adult Dry Dog Food;

- Purina Beyond Natural Simply 9;

- Purina Beyond Simply 9 White Meat Chicken and Whole Barley Recipe Dog Food Dry;

- Purina Cat Chow Complete;

- Purina Dog Chow Complete;

- Purina Dog Chow Natural plus vitamins;

- Purina One, Purposeful Nutrition;

- Purina One, Purposeful Nutrition Classic Beef Recipe;

- Purina One, Purposeful Nutrition Ocean Whitefish Recipe;

- Purina One, Smartblend True Instinct;

- Purina Pro Plan Adult Shredded Blend Chicken & Rice Formula Dog Food;

- Friskies Indoor Delights Cat Food Dry

(hereinafter the "Purina Products" or the "Products").[1]

3.     Plaintiffs bring this action individually and as class representatives to recover damages for violations of the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010 *et seq.*, for economic relief against Purina, which tested, marketed, distributed, promoted, and sold the Purina Products.

---

[1] Plaintiffs reserve the right to amend this Petition to include any additional pet food items sold by Purina that contain glyphosate and are within the scope of this Petition.

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

4.      Purina markets the Products as safe and without risk to animals.  Purina makes numerous claims about the quality and safety of its Products and their ingredients.

5.      Consumers expect products that are marketed as safe and without risk to animals to be safe to use.

6.      Although the Purina Products were marketed, advertised, and sold as safe and without risk to animals, the Products contain glyphosate, a known carcinogen in animals, and do in fact carry significant health risks, as detailed further herein.

7.      Glyphosate is a potent biocide and endocrine disruptor with detrimental health effects that are still becoming known, including being a carcinogen and causing liver damage in animals.

8.      Purina misrepresented, and/or concealed, suppressed, or omitted material facts in connection with the sale, distribution, and/or advertisement of the Purina Products.  Therefore, Plaintiffs, on behalf of themselves and the putative class, seek a refund for monies paid as a result of their purchases of the Purina Products.

## PARTIES

9.      At all relevant times, Plaintiff Kellen Jacquin was and is a citizen of the State of Missouri.  During the Class Period, Plaintiff Jacquin has purchased Purina Products for personal, family, or household use.  Plaintiff Jacquin's purchases include, without limitation Purina One, Purina One, Smartblend True Instinct.  Accordingly, Plaintiff Jacquin has been injured as a result of Defendant's unlawful conduct alleged herein.

10.      At all relevant times, Plaintiff Kristen Sparks was and is a citizen of the State of Missouri.  During the Class period, Plaintiff Sparks has purchased Purina Products for personal, family, or household use.  Plaintiff Sparks' purchases include, without limitation Purina Beneful

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

Originals Adult Dry Dog Food.  Accordingly, Plaintiff Sparks has been injured as a result of Defendant's unlawful conduct alleged herein.

11.     At all relevant times, Plaintiff Gregory Waters was and is a citizen of the State of Missouri.  During the Class Period, Plaintiff Waters has purchased Purina Products for personal, family, or household use.  Plaintiff Water's purchases include, without limitation Purina Beneful Healthy Weight.  Accordingly, Plaintiff Waters has been injured as a result of Defendant's unlawful conduct alleged herein.

12.     Defendant Purina manufactures, distributes, markets, and sells pet foods.  It is a Missouri corporation in good standing in the State of Missouri, with its principal place of business and corporate headquarters located at 1 Checkerboard Square, St. Louis, Missouri 63164.  Defendant conducts business, including advertising and selling Purina Products, throughout Missouri, including the City of St. Louis County, Missouri.  Purina is a citizen of the State of Missouri.  Purina has sold dog food since 1957.  It has spent millions of dollars promoting trust and confidence among consumers in its pet food products.  It holds itself out to the public as a manufacturer of safe, nutritious, and high-quality pet food.

## JURISDICTION AND VENUE

13.     This Court has personal jurisdiction over this matter pursuant to Mo. Rev. Stat. §§ 478.070 and 506.500 because Purina is registered to conduct business in Missouri, has its principal place of business and headquarters in Missouri at 1 Checkerboard Square, St. Louis, Missouri, is present, has transacted and conducted, and continues to transact and conduct substantial business in Missouri, has a registered agent in Missouri, consistently and purposefully avails itself of the privileges of conducting business in Missouri and in this judicial district, and can fairly be regarded as at home in Missouri.  Furthermore, Purina committed a tortious act

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

within this state by marketing, distributing, promoting, and selling the Products in Missouri in a manner which violates the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010 *et seq.*, as detailed further herein.

14.     This Court has personal jurisdiction over Purina because certain of the acts and/or omissions which are the subject of this litigation occurred in the City of St. Louis, Missouri, and Defendant regularly conducts business in the City of St. Louis, Missouri.

15.     As a result of the marketing, distribution, sale, and delivery of the Products, which would be sold to Plaintiffs in the State of Missouri, Defendant, directly and through its subsidiaries, affiliates, or agents, obtained the benefits of the laws of the State of Missouri.

16.     Neither Plaintiffs nor any member of Plaintiffs' Class assert any federal question. Plaintiffs assert only violations of the Missouri Merchandising Practices Act.  Plaintiffs specifically deny any intent to state a cause of action arising under the laws of the United States of America, including any claim for injunctive relief available under federal law.

17.     Venue is proper in this Court pursuant to Mo. Rev. Stat. §§ 508.010.4 and 407.025.

## FACTUAL ALLEGATIONS

### Defendant's False and Misleading Representations

18.     Despite the growing body of evidence that glyphosate is carcinogenic and poses health risks to animals, including the International Agency for Research on Cancer's ("IARC") classification of glyphosate as a class 2A probable carcinogen as discussed below, Purina has continued to misrepresent that its Products are safe and without risk to animals throughout the Class Period.

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

19.     Defendant's marketing materials are replete with statements regarding the safety of the Products, statements that the Products are safe, and the labels of all of the Products state the products are safe.

20.     Defendant claims that the quality and safety of its products are its top priority and cultivates the Purina image of a safe brand through its statements.  Purina's website contains the following statement: "[T]he quality and safety of our products are our top priority."

21.     Purina's website contains numerous additional statements regarding the safety and quality of its ingredients:

- Purina's ingredients are "Responsibly Sourced" which means the company "can **select high quality** cat and dog food ingredients for your pet."

- **"Quality ingredients** that start at the source…That's why we trace every single ingredient that passes through our doors back to our trusted sources.  **Our experts monitor every detail of our ingredients and their origins** – from weather patterns to air quality to livestock management practices."

- "We know exactly what goes into every batch, who made it, when it was made and where it's going."

- "All of our U.S. facilities have on-site assurance laboratories and staff to help us **monitor the safety** and nutrition value of your dog's food."

22.     Purina's website goes on to describe how its Quality Assurance and Safety Team assures that its pet food is safe:

- "When ingredients arrive at one of our 20 U.S. facilities, they are inspected by our Quality Assurance Staff.  **Every ingredient is inspected** for quality before it goes into your pet's food."

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

- "After our food passes **thousands of quality & safety checks,** it's ready for your pet's bowl."

- "Before working with a supplier, our technical team conducts rigorous sampling to ensure the ingredient meets our standards."

- **"We inspect each ingredient** as it arrives at our facilities **for quality and safety**. Our quality assurance team performs multiple checks throughout the manufacturing process and our factory employees have the power to reject any ingredients that don't meet our high standards."

23.     Purina's website also describes the stringent criteria that a Purina supplier must adhere to in order to provide ingredients for its products.  In order to become a Purina supplier, the supplier is subject to a 6 to 12-month assessment.  During this process, Purina takes, among other things, the following steps:

    a.   "Identify suppliers to source Purina's quality ingredients."

    b.   **"Study the integrity of ingredients through regulatory, food safety and toxicology reviews."**

    c.   "**Test ingredients prior to approval** through Nestle Purina Analytical Labs."

24.     Despite Purina's extensive knowledge of its suppliers, supplies and supply chain, it does not disclose that the Products are contaminated with glyphosate.

25.     Despite Purina's extensive efforts to study the integrity of its products' ingredients and conduct toxicology reviews of the ingredients, Purina does not disclose that the Products contain glyphosate and still claims that its Products are safe and not harmful to animals.

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

26.     Purina's website makes no mention that a known carcinogen is used in its pet food ingredients and remains at measurable levels in food consumed by Purina's consumers' pets.

27.     The labeling for the Products misrepresents that the Products and their ingredients are "safe."  Purina makes this claim on the packaging of all the Products.



28.     The labeling for the Products claims that they are "safe," and without risk to animals.  However, each of these representations is false.  Consumers understand the term "safe" to mean that the Products will not cause harm, or contain any ingredients that can cause harm to their pets.  The Merriam-Webster Dictionary defines "safe" as "free from harm or risk."[2]  Under this definition, and the expectation of reasonable consumers, the Products and their ingredients cannot be considered safe because they contain glyphosate which is unsafe and harmful.

---

[2] https://www.merriam-webster.com/dictionary/safe

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

29.     Defendant consistently and systematically marketed, advertised and labeled the Products as "safe" and without risk to animals throughout the Class Period.

**Purina's Products Contain an Alarming Amount of Glyphosate**

30.     Defendant's representations that the Products are safe and without risk to animals are false, misleading, and deceptive because the Purina Products contain an alarming amount of glyphosate.  Numerous studies have confirmed the presence of glyphosate in the Purina Products at levels that cause serious disease in animals.

31.     In September 2015, just four (4) months after the IARC concluded that glyphosate causes cancer in animals (*see* ¶¶ 66-67, *infra*), a study found alarming amounts of glyphosate in the Purina Products.[3]  For example:

- Purina Beneful Originals Adult Dry Dog Food had a glyphosate level of 293.03 ppb.[4]

- Purina Dog Chow Complete had a glyphosate level of 212 ppb.[5]

- Purina Pro Plan Adult Shredded Blend Chicken & Rice Formula Dog Food had a glyphosate level of 212 ppb.[6]

32.     The 2015 study also found significant levels of glyphosate in numerous other Purina Products.[7]

33.     Another study conducted in 2018 found that additional Purina Products contained substantial levels of glyphosate.[8]  The glyphosate concentrations in the Purina Products were higher than those reported for average human diets, resulting in exposure to between 7.3% and

---

[3] Samsel, A. & Seneff, S. (2015) Glyphosate, Pathways to Modern Disease IV.  JBPC Vol 15, 121-159.

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] J. Zhao *et al*. / Detection of glyphosate residues in companion animal feeds, *Environmental Pollution* 243 (2018) 113-118.

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

25% of the allowable intake for humans in the United States.[9]  Moreover, the tendency of animals to eat more as a percent of their body weight than humans do, combined with higher glyphosate levels in their food, suggests that their exposure may be 2.7-28 times higher on a body weight basis depending on the product consumed.[10]

34.     Purina was asked by a consumer to comment on the 2018 study that found Monsanto's top weed killer in its pet food products.  Purina's response was that "Purina pet food is safe and does not contain harmful levels of glyphosate."[11]

35.     The pet food industry adds NaNO2 (sodium nitrite) to some pet foods as a preservative.  This is very common and in the presence of glyphosate is deadly.  Glyphosate reacts continuously over time with NO2 and produces N-Nitrosoglyphosate which is a nasty carcinogen along with phosphonic acids AMPA and MAMPA.

36.     No product marketed and labeled as "safe" and without risk to animals should contain glyphosate.  Contrary to representations made by Purina, Tests conducted by independent laboratories have revealed that the Purina Products contain glyphosate levels that are significantly higher than the 0.1 parts per billion ("ppb") level of glyphosate that causes serious disease in animals.[12]  *See* ¶ 62, *infra*.

| Product | Glyphosate Levels (ppb) |
| --- | --- |
| Purina Alpo Prime Classics | 295.00 |
| Purina Beneful Healthy Weight | 2140.00 |
| Purina Beneful Originals Adult Dry Dog Food | 293.03 |

---

[9] *Id.*

[10] *Id.*

[11] https://twitter.com/Purina/status/1055827901000617984

[12] Research links 0.1 ppb of glyphosate to non-alcoholic liver disease.  Mesnage, R. *et al.*, "Multiomics reveal non-alcoholic fatty liver disease in rats following chronic exposure to ultra-low dose of Roundup herbicide," *SCIENTIFIC REPORTS* 7:39328, published January 9, 2017, *available at* https://www.nature.com/articles/srep39328.pdf.

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

| | |
|---|---|
| Purina Beyond Natural Simply 9 | 93.50 |
| Purina Beyond Simply 9 White Meat Chicken and Whole Barley Recipe Dog Food Dry | 47 |
| Purina Cat Chow Complete Dry | 102 |
| Purina Dog Chow Complete Dry | 212.00 |
| Purina Dog Chow Natural plus vitamins | 92.78 |
| Purina One, Purposeful Nutrition | 261.00 |
| Purina One, Purposeful Nutrition Classic Beef Recipe | 178.00 |
| Purina One, Purposeful Nutrition Ocean Whitefish Recipe | 195.00 |
| Purina One, Smartblend True Instinct | 1540.00 |
| Purina Pro Plan Adult Shredded Blend Chicken & Rice Formula Dog Food | 203.88 |
| Friskies Indoor Delights Cat Food Dry | 79.00 |

37.     Purina claims that it only uses suppliers that provide safe, quality ingredients as set forth above.

38.     Given the presence of glyphosate in the Purina Products, Defendant's representations that its Products are safe and without risk to animals are false and misleading.

39.     Purina's Products thus are not "safe," and labeling or advertising the Products as such is misleading and deceptive.

40.     No serious contention can be made that Products containing glyphosate are "safe."

**Glyphosate Poses Risks to Human and Animal Health**

41.     Glyphosate was invented by the agrochemical and agricultural biotechnology corporation Monsanto, which began marketing the herbicide in 1974 under the trade name Roundup.[13]

---

[13] *See* Shannon Van Hoesen, Study: Monsanto's Glyphosate Most Heavily Used Weed-Killer in History, Environmental Working Group (Feb. 2, 2016), https://www.ewg.org/release/study-monsanto-s-glyphosate-most-heavily-used-weed-killer-history.

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

42.     Glyphosate inhibits the enzyme 5-enolpyruvylshikimate-3-phosphate synthase, which processes amino acids.  Sprayed as a liquid, glyphosate is absorbed by plants through their leaves, stems, and roots.

43.     By the late 1990s, use of Roundup had surged as a result of Monsanto's strategy of genetically engineering seeds to grow food crops that could tolerate high doses of the biocide. Monsanto's marketing strategy promised farmers that the introduction of these genetically engineered seeds would enable farmers to more easily control weeds on their crops.[14]

44.     In 2007, glyphosate was the most-used herbicide in the United States agricultural sector, with 180 to 185 million pounds applied that year, and the second most-used in the home-and-garden market, where users applied 5 to 8 million pounds.

45.     For several decades, Purina has been presented with mounting, consistent evidence that glyphosate poses significant risks to human and animal health, and, is carcinogenic.

46.     As early as 1985, a U.S. Environmental Protection Agency ("EPA") study concluded that glyphosate was oncogenic, meaning it causes the development of tumors.[15]

47.     Glyphosate appears to be absorbed by humans, as glyphosate has been detected in the blood and urine of agricultural workers as well as non-farm workers.[16]

48.     Numerous studies and scientific research have confirmed that glyphosate poses severe and significant risks, as furthered detailed below.

---

[14] *See id.*

[15] EPA Consensus Review of Glyphosate, *available at* https://www3.epa.gov/pesticides/chem_search/cleared_reviews/csr_PC-103601_4-Mar-85_171.pdf.

[16] P.J. Mills, *et al., Excretion of the Herbicide Glyphosate in Older Adults Between 1993 and 2016*, 318 JAMA No. 16 at 1610-11 (October 24/31, 2017); B.D. Curwin, *et al., Urinary pesticide concentrations among children, mothers and fathers living in farm and non-farm households in Iowa*, ANNALS OF OCCUPATIONAL HYGIENE 51, 53–65 (2007).

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

*Glyphosate Is a Carcinogen*

49.     Multiple studies from the late 1990s and early 2000s provided strong evidence that glyphosate posed increased risk of developing cancer in humans and animals.  Specifically, these studies show elevated risk of all non-Hodgkin's lymphoma cancers ("NHL") with glyphosate exposure, including a heightened risk of small lymphocytic lymphoma, follicular lymphoma, diffuse large B-cell lymphoma, and other subtypes.[17]

50.     These studies have also indicated that lymphomas caused by glyphosate can have long "latent" periods, meaning the disease is often present for months or years before it is discovered and diagnosed, and may have no symptoms at diagnosis but can progress over a number of years.

*Glyphosate is Genotoxic*

51.     Toxicologists have studied glyphosate alone, additives alone, and formulations. In 2009, for example, scientists published a study examining the effects of glyphosate on human umbilical, embryonic, and placental cells. The study used low levels of glyphosate. The study concluded that ingredients like the surfactant POEA, in tandem with glyphosate, can change human cell permeability and amplify the toxicity of glyphosate alone. ("Glyphosate formulations induce apoptosis and necrosis in human umbilical, embryonic, and placental cells").[18]

52.     This study and others have concluded that in addition to increased cancer risk, glyphosate likely poses a significant risk of cell-cycle dysfunction and DNA damage, known as genotoxicity.

---

[17] Numerous studies are compiled in the cumulative review by IARC and discussed in Paragraphs 66, 67, *infra*.

[18] C. Gasnier, *et al.. Glyphosate-based herbicides are toxic and endocrine disruptors in human cell lines*, 262 TOXICOLOGY, 184-191 (2009).

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

*Glyphosate Causes Endocrine System Disruption*

53.     Glyphosate is also an endocrine disrupting chemical (EDC).  EDCs can block the binding of hormone to receptor and prevent activation of genes.  They can also bind in place of hormones[19] and mimic their effects.  EDCs exert their effects at very low doses, and with exposure over long periods of time can lead to severe health problems, including cancer, birth defects, and other reproductive and developmental problems.

54.     For example, a 2007 study showed that glyphosate herbicide altered hormone levels in female catfish and decreased egg viability, concluding that the herbicide was harmful to catfish reproduction.[20]

55.     Another earlier study found that Roundup and glyphosate disrupted production of the steroid hormone progesterone in mouse cells.[21]

56.     A study published in 2010 reported that glyphosate herbicide was a potent EDC in rats and caused disturbances in reproductive development after exposure during puberty.[22]

57.     An in vitro experiment on human cells revealed that glyphosate herbicides prevented the action of androgens, masculinizing hormones, at levels up to 800 times lower than the levels of glyphosate residue allowed in some genetically modified crops used for animal feed

---

[19] Glyphosate has been confirmed through multiple research studies to disrupt the sex hormones balance by mimicking estrogen when administered in very low doses.  *See* S. Thongprakaisang, et al., *Glyphosate induces human breast cancer cells growth via estrogen receptors*, 59 FOOD AND CHEMICAL TOXICOLOGY, 129-136 (2013).

[20] A.B. Soso, *et al*., Chronic exposure to sub-lethal concentration of a glyphosate-based herbicide alters hormone profiles and affects reproduction of female Jundiá (Rhamdia quelen), 23 ENVTL. TOXICOLOGY AND PHARMACOLOGY, Issue 3, 308-313 (2007).

[21] L.P. Walsh, *et al., Roundup inhibits steroidogenesis by disrupting steroidogenic acute regulatory (StAR) protein expression*, 108 ENVTL. HEALTH PERSPECTIVES, Issue 8, 769-776.

[22] R.M. Romano, *et al., Prepubertal exposure to commercial formulation of the herbicide Glyphosate alters testosterone levels and testicular morphology*, 84 ARCHIVES OF TOXICOLOGY, 309-317 (2010).

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

in the U.S.  The same study found that the herbicides disrupted the action and formation of estrogens, the feminizing hormones.[23]

58.    A study of Roundup administered to rats in drinking water at half the level permitted in drinking water in the EU and 14,000 times lower than that permitted in drinking water in the U.S. resulted in severe organ damage and a trend of increased incidence of mammary tumors in female animals over a 2-year period of exposure.[24]

59.    This impact on the endocrine system is dose dependent.  Production of hormones is also inhibited by glyphosate.

*Glyphosate Causes Non-Alcoholic Liver Disease in Animals*

60.    Studies examining low doses of glyphosate-based biocides at levels that are generally considered "safe" for humans show that these compounds can nevertheless cause liver and kidney damage in animals.[25]

---

[23] Note 6, *supra*.

[24] G. Séralini, *et al.*, *Republished study: long-term toxicity of a Roundup herbicide and a Roundup-tolerant genetically modified maize*, ENVTL. SCIS. EUROPE 26 (June 24, 2014).

[25] Myers, J., *et al.*, "Concerns over use of glyphosate-based herbicides and risks associated with exposures: a consensus statement," *Environ. Health* 2016 15:9, available at https://ehjournal.biomedcentral.com/articles/10.1186/s12940-016-0117-0; *see also* Seralini, G.E., *et al*, "Republished study: long-term toxicity of a Roundup herbicide and a Roundup-tolerant genetically modified maize," *Environ. Sci. Europe* 2014;26:14, *available at* https://enveurope.springeropen.com/articles/10.1186/s12302-014-0014-5; Benedetti, A.L., "The effects of sub-chronic exposure of Wistar rats to the herbicide Glyphosate-Biocarb, *Toxicol. Lett.* 2004;153(2):227–232, *available at* https://www.ncbi.nlm.nih.gov/pubmed/15451553; Larsen, K., *et al.*, "Effects of Sublethal Exposure to a Glyphosate-Based Herbicide Formulation on Metabolic Activities of Different Xenobiotic-Metabolizing Enzymes in Rats," *Int. J. Toxicol.* 2014, *available at* https://www.ncbi.nlm.nih.gov/pubmed/24985121; Mesnage R., *et al.*, "Transcriptome profile analysis reflects rat liver and kidney damage following chronic ultra-low dose Roundup exposure," *Environ. Health* 2015;14:70, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4549093/.

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

61.     Ultra-low doses of glyphosate formulations fed to rats is linked to an increased likelihood of developing non-alcoholic fatty liver disease (NAFLD).[26]  The dose of glyphosate from the Roundup administered to the rats was thousands of times below what is permitted by regulators worldwide.[27]  Thus, there is a causative link between an environmentally relevant level of glyphosate consumption over the long-term and a serious liver disease in animals.

62.     Research links 0.1 parts per billion ("ppb") of glyphosate to non-alcoholic liver disease.[28]  The disease begins with the accumulation of fat within the cells of the liver, but can progress to inflammation, the development of scar tissue, and in some cases death from liver failure or cancer.[29]  Any type of damage to the liver is likely to impact an animal's health.[30]

63.     One of the authors of the 2017 study, Michael Antoniou, stressed the "worrying" finding about glyphosate at residual levels like that in the Purina Products: "The findings of our study are very worrying as they demonstrate for the first time a causative link between an environmentally relevant level of Roundup consumption over the long-term and a serious disease . . . . Our results also suggest that regulators should reconsider the safety evaluation of glyphosate-based herbicides.[31]

---

[26] Mesnage, R. *et al.*, "Multiomics reveal non-alcoholic fatty liver disease in rats following chronic exposure to ultra-low dose of Roundup herbicide," *SCIENTIFIC REPORTS* 7:39328, published January 9, 2017, *available at* https://www.nature.com/articles/srep39328.pdf.
[27] *Id.*
[28] *Id.*
[29] https://www.westonaprice.org/health-topics/nonalcoholic-fatty-liver-disease/
[30] *Id.*
[31] Sean Poulter, Britain's most used pesticide is linked to a serious liver disease which can be fatal, shocking new study claims, Daily Mail (Jan. 9, 2017), https://www.dailymail.co.uk/health/article-4102990/Britain-s-used-pesticide-linked-deadly-liver-disease-shocking-new-study-claims.html

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

*Scientific Consensus*

64.     Literature reviews analyzing the entire body of studies undertaken on the effects of glyphosate show a statistically significant increase in the risk of developing cancer and other diseases as a result of exposure to glyphosate.

65.     The studies have been peer-reviewed, and they are and were available and or/known to Purina.

66.     A critical inflection point in public and scientific understanding of the risks posed by glyphosate came in 2015, when the International Agency for Research on Cancer ("IARC") undertook a systematic review of scientific research gathered to date.  The IARC is an intergovernmental cancer agency tasked by the World Health Organization of the United Nations with conducting and coordinating research into the causes of cancer.

67.     In March 2015, after a cumulative review of available studies, the IARC reached the conclusion that glyphosate is a Class 2A "probable carcinogen" as demonstrated by the mechanistic evidence of carcinogenicity in humans and ***sufficient evidence of carcinogenicity in animals***.[32]

68.     The IARC found "sufficient evidence in experimental animals" that glyphosate is a carcinogen.[33]  The IARC's conclusion followed review of epidemiologic studies and results from the EPA regarding the risks and effects of glyphosate.  The 2A designation suggests strong evidence of probable causality.

69.     Foreign governments have also concluded that glyphosate is unsafe.  In November 2015, the European Food Safety Agency published conclusions suggesting that the

---

[32] *Available at* https://monographs.iarc.fr/wp-content/uploads/2018/06/mono112-10.pdf.
[33] *Id.*

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

combined use of glyphosate with other chemicals posed greater potential health risks than when glyphosate is used alone.

70.     In light of those conclusions, in April 2016, following a review of products containing glyphosate and tallowamine, a substance that enhances the activity of glyphosate, France's health and safety agency announced its intention to ban weed-killers that combine the two chemicals.[34]

71.     Recently, France banned thirty-six (36) glyphosate-based products over health concerns.[35]

**Purina Has Been Aware of the Presence of Glyphosate in its Products**

72.     Purina knew, or should have known, that the Products contain harmful levels of glyphosate and were not safe.

73.     Purina holds itself out to the public as a trusted expert in the production of "safe" and quality pet food that is not harmful to animals.

74.     Purina has extensive knowledge of its entire supply chain.

75.     According to its website, Purina studies the integrity, quality, and safety of its ingredients and conducts toxicology reviews of its products in order to ensure their safety and quality.  Purina has a "Quality Assurance and Safety Team" that assures that its pet food is safe.

76.     Purina's website states that its experts "monitor every detail" of its "ingredients and their origins."

---

[34] *See* "France to Ban Some Glyphosate Weedkillers Amid Health Concerns," Reuters, Apr. 8, 2016, *available at* https://www.reuters.com/article/us-france-glyphosate-idUSKCN0X512S.
[35] https://www.reuters.com/article/us-france-glyphosate/france-to-ban-dozens-of-glyphosate-weedkillers-amid-health-risk-debate-idUSKBN1YD1BG

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

77.     Purina's website makes clear that Purina knows exactly what goes into its products and "its pet food passes thousands of quality & safety checks" during the manufacturing process.

78.     As mentioned above, Purina claims that it undertakes extensive efforts to study the integrity of its products' ingredients and conducts toxicology reviews of the ingredients.

79.     Purina has extensive knowledge of its suppliers and supply chain and thus knows how the Products are produced, including that glyphosate enters the Products sometime during the production process.

80.     The source of the glyphosate in the Products is known to Purina and its suppliers.

81.     Purina has misrepresented the safety risks of the Products and concealed and suppressed information about the harmful effects of the glyphosate in the Products.

82.     Purina's representations that the Products were safe and without risk to animals when, in fact, they are not, is a material fact.

83.     Purina has failed to adequately inform or warn Plaintiffs of the serious and dangerous risks associated with the use of and exposure to glyphosate and the Products.

84.     To this day, Purina continues to misrepresent, conceal, and suppress information about the safety risks posed by the glyphosate in the Products in its advertising and communications with purchasers.

### The Class

85.     Plaintiffs and the Class purchased the Purina Products, which were falsely represented as set forth above, primarily for personal, family and/or household purposes and thereby suffered an ascertainable loss of money or property as a result of Purina's practices declared unlawful by Missouri's Merchandising Practices Act, because the products Plaintiffs

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

and the other Class Members purchased were worth less than the product they thought they had purchased had Purina's representations been true.

## CLASS ACTION ALLEGATIONS

86.     Plaintiffs and Class Members hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Petition.

87.     Plaintiffs bring this action under Rule 52.08 of the Missouri Rules of Civil Procedure and Missouri Revised Statutes §§407.025.2 and 407.025.3, on behalf of themselves and a class defined as follows:

> **All Missouri residents who, within the five years preceding the filing of this Petition, purchased the Purina Products for personal, family or household use.**

Excluded from the Class:

i.      Defendant, any entity in which a Defendant has a controlling interest or which has a controlling interest in a Defendant, and Defendant's legal representatives, predecessors, successors, assigns, and employees;

ii.     Counsel and members of the immediate family of counsel for Plaintiff herein; and

iii.    The judge and staff to whom this case was assigned, and any member of the judge's immediate family; and

iv.     Individuals claiming they or their pets have suffered a personal injury as a result of using the Products.

88.     Plaintiffs reserve the right to revise this definition of the Class based on facts they learn during discovery.

89.     The proposed Class meets all requirements for class certification.  The Plaintiffs' Class satisfies the numerosity standards.  Plaintiffs have a good faith belief that there are thousands of Class Members in the State of Missouri.  As a result, joinder of all Class Members

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

in a single action is impracticable.  Class Members may be informed of the pendency of this Class Action by published and broadcast notice.

90.     Plaintiffs' claims are typical of the other Class Members.  Plaintiffs and Class Members purchased the Purina Products in the State of Missouri in connection with Defendant's violations of the Missouri Merchandising Practices Act.  Plaintiffs and Class Members have all sustained damages in that each paid the purchase price for the Products.

91.     Plaintiffs are adequate representatives of the Class because they are members of the Class and their interests do not conflict with the interests of the members of the Class they seek to represent.  The interests of Class Members will be fairly and adequately protected by Plaintiffs and their undersigned counsel, who have extensive experience prosecuting complex class action litigation.

92.     Common questions of law and/or fact exist as to all Class Members, which predominate over any questions affecting solely individual Class Members.  The questions of law and fact common to the Class arising from Purina's actions include, without limitation, the following:

a.   Whether, in marketing and selling the Products, Purina misrepresented, concealed and/or suppressed the dangers and risks to the health of animals consuming the Products;

b.   Whether Purina misrepresented in its advertisements, marketing materials, labeling, website statements, and public statements, among other things, the safety the Products;

c.   Whether Purina failed to warn adequately of the risks of adverse effects of the Products;

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

d.   Whether Purina knew or should have known of the risks that the use of the Products could lead to serious adverse health effects;

e.   Whether Purina adequately tested the Products and their ingredients;

f.   Whether Purina continued to manufacture, market, distribute, and sell the Products notwithstanding its knowledge of glyphosate and the Products' dangerous nature;

g.   Whether Purina knowingly omitted, suppressed, or concealed material facts about the unsafe and defective nature of the Products from government regulators and/or the consuming public.

h.   Whether Purina's affirmative representations and/or failure to disclose that the Products contain glyphosate and carry significant health risks constitutes deception, fraud, false pretense, false promise, misrepresentation, unfair practices and omission, concealment, and suppression of material information in connection with the sale or advertisement of merchandise in trade or commerce in or from the state of Missouri;

i.   Whether Purina's conduct violated the Missouri Merchandising Practices Act;

j.   Whether Plaintiffs and the Class Members have sustained monetary loss and the proper measure of that loss;

k.   Whether Plaintiffs and Class Members are entitled to an award of compensatory damages;

l.   Whether Plaintiffs and Class Members are entitled to an award of punitive damages as permitted by the Missouri Merchandising Practices Act; and

m.   Whether injunctive, declaratory, and/or other equitable relief is warranted.

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

93.     These and other questions of law and/or fact are common to the Class and predominate over any questions affecting only individual members of the Class.  The resolution of common questions in this case will resolve the claims of both Plaintiffs and the Class.

94.     A class action is superior, with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.  The prosecution of separate actions by individual Class Members would impose heavy burdens upon the courts and Defendant, and would create a risk of inconsistent or varying adjudications of the questions of law and/or fact common to the Class.  In addition, the prosecution of separate actions by individual Class Members would establish incompatible standards of conduct for any party opposing the Class.  Also, the prosecution of separate actions by individual Class Members, if fully adjudicated, as a practical matter, would be dispositive of the interests of the other Class Members not parties to that particular adjudication and, as such, would substantially impair or impede upon those Class Members abilities to protect their interests.  A class action, on the other hand, would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

95.     The interest of Class Members in individually controlling the prosecution of separate actions is theoretical rather than practical.  The Class has a high degree of cohesion, and prosecution of the action through a representative would be unobjectionable.  The amounts at stake for Class Members, while substantial in the aggregate, may not be great enough individually to enable them to maintain separate suits against Defendant.  Plaintiffs do not anticipate any difficulty in the management of this action as a class action.

96.     Plaintiffs seek a refund of monies paid for the Purina Products.

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

97.     Plaintiffs specifically exclude from this Class Action any damages, losses, or other relief of any kind arising from the personal injuries suffered by those Class Members' animals diagnosed with the various diseases caused by glyphosate.  This Class Action seeks only economic relief requested herein to which Class Members are entitled under the Missouri Merchandising Practices Act.

98.     Notice can be provided to Class Members by using techniques and forms of notice similar to those customarily used in other consumer product-related cases and complex class actions.

## ALLEGATIONS RELATED TO PUNITIVE DAMAGES

99.     Plaintiffs and Class Members hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Petition.

100.     Defendant Purina's unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts in connection with the sale, distribution or advertisement of the Products were outrageous because of Purina's evil motive and/or conscious disregard and/or reckless indifference to the rights and/or safety of Plaintiffs' animals and Class Members alike.

101.     As a result of Purina's conduct alleged herein, the jury should be permitted to return a verdict of punitive damages under the Petition that will serve to punish Purina and deter others from like conduct.  The Missouri Merchandising Practices Act expressly provides for punitive damages.  *See* Mo. Rev. Stat. § 407.025.

**CLAIM FOR RELIEF**
**VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT**
**Mo. Rev. Stat. §§ 407.010, *et seq*.**

102.    Plaintiffs and Class Members hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Petition.

103.    The acts and practices engaged in by Defendant, and described herein, constitute unlawful, unfair and/or fraudulent business practices in violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010, *et seq*.

104.    Defendant's actions alleged herein violated, and continue to violate, the MMPA.

105.    Defendant is a "person" within the meaning of the MMPA, at Missouri Revised Statutes § 407.010(5).

106.    The goods purchased from Defendant are "merchandise" within the meaning of the MMPA, Missouri Revised Statutes § 407.010(4).

107.    The transactions resulting in purchases of goods from Defendant in Missouri are a "sale" within the meaning of the MMPA, Missouri Revised Statutes § 407.010(6).

108.    Defendant engaged in unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts in connection with the sale, distribution or advertisement of the Purina Products in violation of Mo. Rev. Stat. § 407.020, which states in relevant part as follows:

> 407.020. 1. The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce ... is declared to be an unlawful practice. ... Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

109.    Plaintiffs and Class Members purchased the Purina Products, products that were falsely represented as safe and without risk to animals, as stated above, in violation of the

25

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

Missouri Merchandising Practices Act and as a result Plaintiffs suffered economic damages, in that the product they and other Class Members purchased was worth less than the product they thought they had purchased had Defendant's representations been true.

110.    At all times relevant herein, Plaintiffs were unaware that the Purina Products contained significant levels of glyphosate.

111.    At all times relevant herein, Plaintiffs were unaware that the Purina Products had significant carcinogenic, and otherwise toxic, properties.

112.    At all times relevant herein, Plaintiffs were unaware that using the Purina Products to feed their animals created a risk of cancer.

113.    At all times relevant herein, Plaintiffs were unaware that using the Purina Products to feed their animals created a significant risk of genotoxicity.

114.    At all times relevant herein, Plaintiffs were unaware that using the Purina Products to feed their animals created a risk that endocrine pathways would be disrupted.

115.    At all times relevant herein, Plaintiffs were unaware that using the Purina Products to feed their animals created a risk of liver disease and kidney damage.

116.    Defendant's marketing materials for the Purina Products do not disclose that the Products contain glyphosate.

117.    Defendant's marketing materials for the Purina Products do not disclose that the Products have any carcinogenic effects on animals.

118.    Defendant's marketing materials for the Purina Products do not disclose that glyphosate has been found to be a carcinogen in animals by the International Agency for Research on Cancer.

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

119.    Defendant's marketing materials for the Purina Products do not disclose that glyphosate creates a significant risk of genotoxicity in animals.

120.    Defendant's marketing materials for the Purina Products do not disclose that glyphosate is an endocrine disrupting chemical in animals.

121.    Defendant's marketing materials for the Purina Products do not disclose that glyphosate creates a risk of liver disease and kidney damage in animals.

122.    Defendant's website does not disclose that the Products contain glyphosate.

123.    Defendant's website does not disclose that the Products have any carcinogenic effects on animals.

124.    Defendant's website does not disclose that glyphosate has been found to be a carcinogen in animals by the International Agency for Research on Cancer.

125.    Defendant's website does not do not disclose that glyphosate creates a significant risk of genotoxicity in animals.

126.    Defendant's website does not disclose that glyphosate is an endocrine disrupting chemical in animals.

127.    Defendant's website does not disclose that glyphosate creates a risk of liver disease and kidney damage in animals.

128.    Defendant's labeling for the Purina Products does not disclose that the Products contain glyphosate.

129.    Defendant's labeling for the Purina Products does not disclose that the Products have any carcinogenic effects on animals.

130.    Defendant's labeling for the Purina Products does not disclose that glyphosate has been found to be a carcinogen in animals by the International Agency for Research on Cancer.

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

131.    Defendant's labeling for the Purina Products does not disclose that glyphosate creates a significant risk of genotoxicity in animals.

132.    Defendant's labeling for the Purina Products does not disclose that glyphosate is an endocrine disrupting chemical in animals.

133.    Defendant's labeling for the Purina Products do not disclose that glyphosate creates a risk of liver disease and kidney damage in animals.

134.    Defendant's failure to disclose the fact that the Purina Products contain glyphosate and carry significant health risks to animals, was a violation of the Missouri Merchandising Practices Act, as further stated herein, and was a material omission.

135.    Defendant's failure to disclose the fact that the glyphosate in the Purina Products has the potential to cause cancer, was a violation of the Missouri Merchandising Practices Act, as further stated herein, and was a material omission.

136.    Defendant's failure to disclose the fact that the glyphosate in the Purina Products has the potential to cause genotoxicity in animals., was a violation of the Missouri Merchandising Practices Act, as further stated herein, and was a material omission.

137.    Defendant's failure to disclose the fact that the glyphosate in the Purina Products has the potential to be an endocrine disruptor, was a violation of the Missouri Merchandising Practices Act, as further stated herein, and was a material omission.

138.    Defendant's failure to disclose the fact that the glyphosate in the Purina Products has the potential to cause liver disease and kidney damage, was a violation of the Missouri Merchandising Practices Act, as further stated herein, and was a material omission.

139.    The foregoing acts and practices of Defendant constituted unfair and unlawful practices, and deceptive conduct, in violation of the Missouri Merchandising Practices Act.

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

140.     As a direct proximate result of the above-described practices, Plaintiffs and Class Members suffered ascertainable loss of money due to the purchasing of the Purina Products.

141.     Appropriate injunctive relief is necessary to prevent Purina's MMPA violations from continuing.  If Purina's violations of the MMPA are not stopped by such injunctive relief, Plaintiffs and the members of the class will continue to suffer injury.

142.     The conduct of Defendant was malicious, corrupt, and intentional and/or reckless to a degree sufficient to support an award of punitive damages against Defendant.

143.     WHEREFORE, Plaintiffs and the Class pray for the relief requested in the Prayer for Relief set forth below in this Petition.

## PRAYER FOR RELIEF

144.     WHEREFORE, Plaintiffs and each member of the proposed Class pray for a judgment:

(a)  Certifying the Class as requested herein;

(b)  Entering an order appointing Orlowsky Law, LLC and Goffstein Law, LLC as counsel for the Class;

(c)  Returning all purchase costs Plaintiffs and the Class paid for the Purina Products;

(d)  Awarding declaratory and injunctive relief as permitted by law or equity including a preliminary and permanent injunction enjoining Defendant from continuing the unlawful practices as set forth herein;

(e)  Awarding punitive damages in an amount to be determined at trial;

(f)  Awarding pre-judgment interest;

(g)  Awarding post-judgment interest;

(h)  Awarding attorneys' fees and costs;

29

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

(i)  Providing such further relief as the Court may deem fair and reasonable.

## JURY DEMAND

145.    Plaintiffs demand a trial by jury on all issues so triable.


Dated:  March 2, 2020                         Respectfully submitted,

                                              Orlowsky Law, LLC


                                              /s/ Daniel J. Orlowsky
                                              Daniel J. Orlowsky, #57387
                                              7777 Bonhomme Ave., Suite 1910
                                              St. Louis, Missouri 63105
                                              Phone:  (314) 725-5151
                                              Fax:  (314) 455-7357
                                              dan@orlowskylaw.com

                                              Attorney for Plaintiffs



                                              Goffstein Law, LLC


                                              /s/ Adam M. Goffstein
                                              Adam M. Goffstein, #45611
                                              7777 Bonhomme Ave., Suite 1910
                                              St. Louis, Missouri 63105
                                              Phone:  (314) 725-5151
                                              Fax:  (314) 455-7278
                                              adam@goffsteinlaw.com

                                              Attorney for Plaintiffs

**2022-CC00473**

Electronically Filed - City of St. Louis - March 02, 2020 - 02:37 PM

**In the**

# CIRCUIT COURT

## City of St. Louis, Missouri



KELLEN JACQUIN, et al
_____

Plaintiff/Petitioner

┌
                                          For File Stamp Only

_____

Date

vs.

NESTLE PURINA PETCARE COMPANY
_____

Defendant/Respondent

_____

Case number

_____

Division
                                              └

## <u>REQUEST FOR APPOINTMENT OF PROCESS SERVER</u>

Comes now _____PLAINTIFFS_____, pursuant
                                            Requesting Party

to Local Rule 14, requests the appointment by the Circuit Clerk of
John Frederick, Isaiah Thomas and Diana Capri   P.O. Box 270471, St. Louis,MO  63127   314-966-5585
_____
Name of Process Server                        Address                                     Telephone

_____
Name of Process Server                        Address                                     Telephone

_____
Name of Process Server                        Address                                     Telephone

to serve the summons and petition in this cause on the below named parties.

SERVE:
Nestle Purina PetCare Co., RA CT Corp System
_____
Name
120 S. Central Avenue
_____
Address
Clayton, MO  63105
_____
City/State/Zip

SERVE:

_____
Name

_____
Address

_____
City/State/Zip

SERVE:

_____
Name

_____
Address

_____
City/State/Zip

SERVE:

_____
Name

_____
Address

_____
City/State/Zip

Appointed as requested:
**TOM KLOEPPINGER,** Circuit Clerk

By_____
       Deputy Clerk

_____
Date

/s/Daniel J. Orlowsky
_____
Attorney/Plaintiff/Petitioner
57387
_____
Bar No.
7777 Bonhomme Ave., #1910, Clayton, 63105
_____
Address
314-725-5151
_____
Phone No.

# IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>REX M BURLISON | **Case Number:  2022-CC00473** | Special Process Server 1<br>J. FREDERICK |
| Plaintiff/Petitioner:<br>KELLEN JACQUIN | Plaintiff's/Petitioner's Attorney/Address<br>DANIEL JOHN ORLOWSKY<br>7777 BONHOMME AVE<br>SUITE 1910<br>ST. LOUIS, MO  63105 | Special Process Server 2<br>I. THOMAS |
| | vs. | Special Process Server 3 |
| Defendant/Respondent:<br> NESTLE PURINA PETCARE CO. | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO  63101 | |
| Nature of Suit:<br>CC Other Tort | | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to:  NESTLE PURINA PETCARE CO.
          **Alias:**

RA  CT CORPORATION SYSTEM
120 SOUTH CENTRAL AVENUE
CLAYTON, MO  63105

**SPECIAL PROCESS SERVER**

*COURT SEAL OF*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

*CITY OF ST LOUIS*

**March 3, 2020**

_____
Date

_____
Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____
Printed Name of Sheriff or Server

_____
Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*

Subscribed and sworn to before me on _____ (date).

My commission expires: _____

_____
Date

_____
Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | **$_____** |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

Electronically Filed - City of St. Louis - March 17, 2020 - 12:26 PM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

| | | |
|---|---|---|
| KELLEN JACQUIN, KRISTEN SPARKS, and GREGORY WATERS, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Cause No. 2022-CC00473 |
| vs. | ) ) | Division: |
| NESTLE PURINA PETCARE COMPANY, | ) ) ) | |
| Defendant. | ) | |

## ENTRY OF APPEARANCE AS CO-COUNSEL

COMES NOW Adam M. Goffstein of Goffstein Law, LLC and hereby enters his appearance as co-counsel on behalf of Plaintiffs in the above-referenced matter.

Respectfully submitted,

GOFFSTEIN LAW, LLC

/s/ Adam M. Goffstein
Adam M. Goffstein, #45611
7777 Bonhomme Ave., Suite 1910
St. Louis, Missouri 63105
Phone:  (314) 725-5151
Fax:  (314) 455-7278
adam@goffsteinlaw.com

Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this  17th  day of  March , 2020, a copy of the foregoing was electronically filed with the Missouri Court's e-filing system and electronically served upon all attorneys of record.

/s/Adam M. Goffstein

Electronically Filed - City of St. Louis - March 17, 2020 - 12:52 PM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

KELLEN JACQUIN, KRISTEN SPARKS,      )
and GREGORY WATERS, on behalf of     )
themselves and all others similarly situated,     )
                                     )
                    Plaintiffs,      )          Cause No. 2022-CC00473
                                     )
vs.                                  )          Division:
                                     )
NESTLE PURINA PETCARE COMPANY,       )
                                     )
                    Defendant.       )

**MEMORANDUM TO CLERK REGARDING RETURN OF SERVICE**

COME NOW Plaintiffs, by and through counsel, and file their Return of Service upon

Defendant, Nestle Purina Petcare Company.

Costs to be taxed against Defendants.  (See attached).

Respectfully submitted,

ORLOWSKY LAW, LLC

/s/Daniel J. Orlowsky
Daniel J. Orlowsky, #57387
7777 Bonhomme Ave., Suite 1910
St. Louis, Missouri 63105
Phone:  (314) 725-5151
Fax:  (314) 455-7357
adam@goffsteinlaw.com

Attorney for Plaintiffs

Electronically Filed - City of St. Louis - March 17, 2020 - 12:52 PM

GOFFSTEIN LAW, LLC

/s/ Adam M. Goffstein
Adam M. Goffstein, #45611
7777 Bonhomme Ave., Suite 1910
St. Louis, Missouri 63105
Phone:  (314) 725-5151
Fax:  (314) 455-7278
adam@goffsteinlaw.com

Attorney for Plaintiffs

### <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this  17th day of  March , 2020, a copy of the foregoing was electronically filed with the Missouri Court's e-filing system and electronically served upon all attorneys of record.

/s/Daniel J. Orlowsky

Electronically Filed - City of St. Louis - March 17, 2020 - 12:52 PM



## IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI

| Judge or Division:<br>REX M BURLISON | Case Number:  2022-CC00473 | Special Process Server 1<br>J. FREDERICK |
|---|---|---|
| Plaintiff/Petitioner:<br>KELLEN JACQUIN | Plaintiff's/Petitioner's Attorney/Address<br>DANIEL JOHN ORLOWSKY<br>7777 BONHOMME AVE<br>SUITE 1910<br>ST. LOUIS, MO  63105 | Special Process Server 2<br>I. THOMAS |
| vs. | | Special Process Server 3 |
| Defendant/Respondent:<br> NESTLE PURINA PETCARE CO. | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO  63101 | |
| Nature of Suit:<br>CC Other Tort | | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to:   NESTLE PURINA PETCARE CO.
                                        Alias:

RA  CT CORPORATION SYSTEM
120 SOUTH CENTRAL AVENUE
CLAYTON, MO 63105

**COURT SEAL OF**

*CITY OF ST LOUIS*

**SPECIAL PROCESS SERVER**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

**March 3, 2020**
_____                    _____
        Date                                                   Clerk

Further Information:

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within 30 days after the date of issue.
I certify that I have served the above summons by: (check one)
☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____ , a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
☒ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to:
*Bonnie Love* (name) *Authorized to Accept Process* (title).
☐ other: _____
Served at *100 South Central Ave, Suite 400, Clayton, Mo 63105* (address)
in *Saint Louis* (County/City of St. Louis), MO, on *3-4-20* (date) at *9:30am* (time).

*Isaiah Thomas*                                                *(signature)*
Printed Name of Sheriff or Server                    Signature of Sheriff or Server

Must be sworn before a notary public if not served by an authorized officer:
Subscribed and sworn to before me on  *3/4/2020*  (date).
My commission expires:  *1/2/2020*                   *Jaimie Maness*
                                      Date                                   Notary Public

**JAIMIE MANESS**
**Notary Public**
**(Seal)**
**Commission # 13430890**
**Jefferson County**
**STATE OF MISSOURI**
**My Commission Expires 01-02-20**

Sheriff's Fees, if applicable
Summons                      $ _____
Non Est                        $ _____
Sheriff's Deputy Salary
Supplemental Surcharge   $ ____10.00____
Mileage                        $ _____ ( _____ miles @ $. _____ per mile)
Total                           $ _____
A copy of the summons and a copy of the petition must be served on each defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.