UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KELLEN JACQUIN, KRISTEN SPARKS, and GREGORY WATERS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NESTLÉ PURINA PETCARE COMPANY,<br><br>Defendant. | Case No. 4:20-cv-00467 |

**DEFENDANT NESTLÉ PURINA PETCARE COMPANY'S
MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

In opposition to Plaintiffs Kellen Jacquin, Kristen Sparks, and Gregory Waters' ("Plaintiffs") Motion to Remand, Defendant Nestlé Purina PetCare Company ("Purina") states the following:

**INTRODUCTION**

Plaintiffs' class action complaint is based on the unsubstantiated allegation that some of Purina's most popular brands of pet food products, including iconic brands such as Dog Chow and Cat Chow, are "unsafe" for dogs and cats to consume because of the alleged presence of glyphosate residue at a level that is approximately *one thousand times* below the safe limits established by the U.S. Environmental Protection Agency ("EPA") and the U.S. Food & Drug Administration ("FDA"). Both the EPA and FDA, the federal agencies charged with ensuring food safety, have comprehensively reviewed the impact

of glyphosate residue on food products and have determined that trace amounts of residue in food are safe and that food manufacturers need not label products to disclose the potential presence of trace residue. Despite these comprehensive federal regulatory requirements, Plaintiffs contend that they should be entitled to use Missouri consumer protection law to dictate different requirements for certain pet food products sold by Purina. To that end, Plaintiffs filed their Petition initiating this case in Missouri state court on behalf of Missouri residents.

Purina properly removed the Petition, and Plaintiffs do not dispute that jurisdiction over the Petition is proper in this Court under the Class Action Fairness Act ("CAFA"). Rather, Plaintiffs' sole argument supporting remand is that the Court must ignore the Petition and instead assess its jurisdiction solely based on the First Amended Petition ("FAP") – a pleading that Plaintiffs "raced to the courthouse" to file for the sole purpose of attempting to defeat removal by inserting a sham allegation that the class is comprised not of Missouri purchasers or Missouri residents, but "Missouri citizens." Plaintiffs, however, did not file *and* serve the sham FAP on Purina *prior to* Purina filing its notice of removal with the state court. Plaintiffs' failure to properly serve the FAP on Purina prior to the state court being divested of jurisdiction is fatal to Plaintiffs' efforts, and renders the FAP an impermissible post-removal pleading that this Court cannot consider. *Hargett v. RevClaims, LLC*, 854 F.3d 962, 966-67 (8th Cir. 2017) (recognizing that a post-removal amendment narrowing a class of Arkansas "residents" to Arkansas "citizens" to destroy federal diversity jurisdiction is impermissible).

Once Plaintiffs' weak attempt at forum-shopping is rejected, there is no question that the narrow exceptions to the exercise of jurisdiction under CAFA do not support remand of this case. Plaintiffs have failed to meet their burden under 28 U.S.C. § 1332(d) to supply evidence that two-thirds or more of their proposed class of Missouri residents are also Missouri citizens. Further, Plaintiffs' lawsuit is not a local controversy, but rather involves the nationwide manufacture and sale of pet food and the comprehensive federal regulatory requirements governing food labeling and food safety. Accordingly, the issues raised in this case are not local in nature and require the application of federal, not state law.

For these reasons, and as set forth more fully below, Plaintiffs' motion should be denied.[1]

## FACTUAL BACKGROUND

Plaintiffs fail to inform this Court of the entire relevant factual background leading up to Purina's removal of the action. Specifically, Plaintiffs fail to mention that the FAP was not filed and served on Purina *before* Purina effected removal on April 1, 2020.

### A. Plaintiffs' Lawsuit

On March 2, 2020, Plaintiffs filed their Petition against Purina in the St. Louis City Circuit Court (the "State Court"). The Petition alleges that fourteen of Purina's dog and cat food products, sold nationwide, are deceptively labeled and advertised as being

---

[1] Purina's Opposition is provided to the Court in 13-point size font. The brief in 12-point size font does not exceed the 15-page limitation in Local Rule 4.01.

safe for pets to consume because they contain trace amounts of glyphosate residue, an alleged carcinogen. Notice of Removal Ex. A, Pet. ¶¶ 1-6, 30, Dkt. No. 1-1. Plaintiffs' allegations regarding the supposed levels of glyphosate residue on the products are significantly below the safe and permitted levels established by the EPA and FDA. *See* 49 C.F.R. § 180.364. Noticeably absent from the Petition is any recognition of the comprehensive regulatory requirements related to glyphosate residue in food that are managed and governed by the EPA and FDA.

Plaintiffs bring one claim under the Missouri Merchandising Practices Act, § 407.010 RSMo. *et seq.*, on behalf of a proposed class defined as "All Missouri *residents* who, within the five years preceding the filing of this Petition, purchased the Purina Products for personal, family or household use." Pet. ¶ 87 (emphasis added).

### B. Purina's Notice of Removal

On March 4, 2020, Plaintiffs served the Petition on Purina. Notice of Removal Ex. A at 38. On April 1, 2020, Purina timely filed its Notice of Removal of the Petition to this Court pursuant to CAFA, 28 U.S.C. § 1332(d)(2). As stated in Purina's Notice of Removal, the Petition invokes this Court's subject matter jurisdiction under CAFA because there are more than 100 members in the proposed class, the amount in controversy exceeds $5 million, and at least one member of the putative class is a citizen of a state different from Purina. *See* 28 U.S.C. § 1332(d)(2). The putative class, composed entirely of residents of Missouri, is by definition not limited to citizens of the State of Missouri. Pet. ¶ 87. While in the process of filing the Notice of Removal on April 1, Purina notified Plaintiffs of the removal under CAFA. Purina filed its removal of

- 4 -

the action, and promptly thereafter filed its Notice of Removal to the State Court *See* **Exhibit A**, Notice of Electronic Filing of Notice of Removal; Pls.' Mem. Ex. C, Dkt. No. 13-3. Pursuant to Local Rule 2.03, Purina attached a docket sheet reflecting the then-filed pleadings, and pursuant to 28 U.S.C. § 1446, Purina enclosed a copy of "all process, pleadings, and orders *served* upon" it. Notice of Removal Ex. A. Counsel for Purina emailed counsel for Plaintiffs a copy of its removal papers. *See* Pls.' Mem. Ex. B.

### C. Plaintiffs' Failure to File and Serve the Amended Complaint Before Removal

It was not until *after* Purina had filed its removal petition, that Plaintiffs provided Purina with a courtesy copy of Plaintiffs' purported FAP. The FAP's sole change was the insertion of the phrase "Missouri citizens," and the removal of the phrase "Missouri residents," from Plaintiffs' proposed class definition. Pls.' Mem. Ex. A. Plaintiffs, apparently agreeing that their class of Missouri residents established this Court's jurisdiction under CAFA, sought to eliminate federal jurisdiction.

That means that at the time Purina filed the removal petition, it had no notice of the FAP, much less had been properly served with the FAP. The very first time Purina even became aware of the FAP was *after* removal had been effected. *See* **Exhibit B**, Apr. 1, 2020 email from D. Orlowsky. In fact, pursuant to the Federal Rules of Civil Procedure, Purina has never properly been served with the FAP because counsel for Purina did not agree to accept electronic service under Rule 5(b)(2)(E), and a certificate of service of the FAP has never been filed. The only purported "service" of the FAP was

the courtesy copy emailed by Plaintiffs' counsel in response to Purina providing Plaintiffs' counsel with a copy of the removal petition.[2] *Id.*

Even if providing Purina with a courtesy copy of the FAP by email is deemed to be proper service under Missouri Supreme Court Rule 43.01, Plaintiffs' belated attempt to remain in State Court had already failed. Accordingly, this Court entered the Petition from the State Court on April 2, 2020. *See* Dkt. Entry No. 4 (stating "Petition (Removal/Transfer) Received From: Circuit Court, City of St. Louis").

Plaintiffs' Motion should be denied because this Court possesses federal subject matter jurisdiction under CAFA based on the Petition.

## **GOVERNING LEGAL STANDARDS**

"Under CAFA, federal courts have jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 in the aggregate; there is minimal (as opposed to complete) diversity among the parties, i.e., any class member and any defendant are citizens of different states; and there are at least 100 members in the class." *Grawitch v. Charter Commc'ns, Inc.*, 750 F.3d 956, 959 (8th Cir. 2014). "In the case of a removed action, diversity must exist both when the state petition is filed and when the petition for removal is filed." *Ryan ex rel. Ryan v. Schneider Nat'l Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001). Where this requirement is met, "later events do not deprive a court of

---

[2] Prior to filing the notice of removal, counsel for Purina had not yet entered their appearances in the State Court action and could not receive electronic filing notifications. *See* Notice of Removal Ex. A at 2. No one could publicly view notice of or receive a copy of the FAP because the State Court had not accepted it. The filing was not publicly available until April 10, 2020 when the State Court accepted the filing. *See* **Exhibit C**, Apr. 10, 2020 Electronic Notice of Entry.

jurisdiction over parties who were properly aligned in the first instance." *Id.* (citing *Universal Underwriters Ins. Co. v. Wagner*, 367 F.2d 866, 870-71 (8th Cir. 1966)).

"Once CAFA's initial jurisdictional requirements have been established by the party seeking removal . . . the burden shifts to the party seeking remand to establish that one of CAFA's express jurisdictional exceptions applies." *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010). Plaintiffs must prove the exception applies by a preponderance of the evidence. *White Knight Diner, LLC v. Arbitration Forums, Inc.*, 2018 WL 398401, at *3 (E.D. Mo. Jan. 12, 2018). This Court must resolve any doubt about the applicability of such exceptions against the party seeking remand. *Id.*

## ARGUMENT

I. **REMAND IS NOT APPROPRIATE BECAUSE THE PETITION WAS THE OPERATIVE PLEADING AT THE TIME REMOVAL WAS EFFECTED**

Plaintiffs seek to remand this case to the State Court solely based on the assertion that the amendment made in the FAP was sufficient to evade CAFA jurisdiction. Plaintiffs contend that because the FAP was *filed* in State Court before removal became effective, "the FAP . . . is the controlling petition for purposes of removal." *See* Pls.' Mem. 4. That assertion, however, is legally incorrect because under Missouri Supreme Court Rules, the FAP did not become the operative pleading until it was served on Purina. *See* MO. SUP. CT. R. 43.01 (requiring every pleading subsequent to the original petition to be served). Accordingly, the FAP did not become the operative pleading until *after* Notice of Removal had been given to the State Court, immediately divesting it of

- 7 -

jurisdiction. At the time removal became effective, the Petition was the operative pleading and this Court, therefore, must assess jurisdiction as alleged in the Petition.

Several courts, including in Missouri, have held that the existence of jurisdiction for removal must be determined on the basis of the pleading which has been properly served at the time of removal. *See Dunlap v. Gen. Motors LLC*, 2016 WL 7391049, at *3 (W.D. Mo. Dec. 21, 2016) ("Plaintiffs do not dispute that they failed to serve Defendant with the Amended Petition as required by Missouri Rule 43.01 before Defendant removed the case . . . The Court concludes that Defendant's Notice of Removal complied with the procedural requirements of § 1446, so the Motion to Remand must be denied.");[3] *Thompson v. Victoria Fire & Cas. Co.*, 32 F. Supp. 2d 847, 848 (D.S.C. 1999) ("The complaint in effect at the time of removal was the original complaint because the amended complaint, although filed with the state court, had yet to be served"); *Momans v. St. John's Nw. Military Acad., Inc.*, 2000 WL 33976543, at *2 (N.D. Ill. Apr. 20, 2000) (considering only the pleading that was served at the time of removal because "service of the amended complaint must be completed to effectuate the amended pleading"); *Certain Underwriters at Lloyd's London v. Art Crating, Inc.*, 2014 WL 123488, at *8 (E.D.N.Y. Jan. 10, 2014) ("Service of the amended pleadings was within [plaintiff's] control, and requiring [defendant] to remove based on pleadings filed and not served would be to

---

[3] Although the court in *Dunlap* held that the amended petition was the operative petition to analyze whether the court had subject matter jurisdiction, federal jurisdiction in *Dunlap* was premised on the court's original jurisdiction over bankruptcy cases pursuant to 28 U.S.C. § 1334, rather than diversity of citizenship pursuant to 28 U.S.C. § 1332. *See Dunlap*, 2016 WL 7391049, at *4. In federal diversity cases, a complaint cannot be amended post-removal to destroy diversity. *See Ryan*, 263 F.2d at 819.

- 8 -

require [defendant] to remove based on pleadings it had not yet received . . . Instead, it would best accord with the procedures of 28 U.S.C. § 1446(a) to consider the pleadings Congress required [defendant] to append to its notice of removal."); *Goldberg v. Cameron*, 2015 WL 5316339, at *3 (N.D. Cal. Sept. 11, 2015) ("Because the amended complaint [was] not served by the time defendants filed the notice of removal, the original complaint was the operative complaint."); *Goel v. Coal. Am. Holding Co. Inc.*, 2011 WL 13128299, at *2 (C.D. Cal. May 19, 2011) ("[T]he original complaint remained the operative complaint until the FAC was properly served."); *Pritt v. Republican Nat. Comm.*, 1 F. Supp. 2d 590, 591 (S.D.W. Va. 1998) ("[A]n amended complaint supersedes an original complaint when the amended complaint is served on the parties, not when it is filed with the court."); *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668–69 (2d Cir. 1977) (holding in the context of a motion to vacate judgment, "the original complaint is not superseded until the amended complaint is served").

Plaintiffs' reliance on *Anthony v. Runyon*, 76 F.3d 210 (8th Cir. 1996), does not dictate a different result. In *Anthony*, the Eighth Circuit held that the "only rule that logically follows from 28 U.S.C. § 1446(d) is that removal is effected when the notice of removal is filed with the state court and at no other time." 76 F.3d at 214. *Anthony*'s holding regarding when removal is effective is entirely consistent with the principle that an amended complaint becomes operative only after it is served. At the time the removal became effective when it was filed in state court, Purina had not yet received service of the FAP, making the Petition the operative petition for purposes of removal.

Even still, *Anthony* is factually distinguishable from the facts at hand. In contrast to *Anthony*, in which the defendant waited eight days between filing its notice of removal in federal and state court, Purina acted diligently and without knowledge of Plaintiffs' FAP in filing its Notice of Removal in the State Court minutes after it was filed in federal court. Plaintiffs, on the other hand, were aware of Purina's Notice of Removal, yet raced to the courthouse steps in an attempt to defeat federal diversity jurisdiction. In these circumstances, the Court should not enable Plaintiffs to destroy federal diversity jurisdiction through the FAP. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 & n. 6 (2007) ("Removal cases present concerns about forum manipulation that counsel against allowing a plaintiff's post-removal amendments to affect jurisdiction."); *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) (noting that, in a case removed under CAFA, "we doubt that anything filed after a notice of removal can affect federal jurisdiction"); *Hargett*, 854 F.3d at 966-67 (refusing to consider a post-removal amendment that would have narrowed the original class of Arkansas "residents" to Arkansas "citizens" to destroy federal diversity jurisdiction).

The text of 28 U.S.C. § 1446(a) also supports the conclusion that removal must be determined on the basis of the documents that were served, not the documents that were filed but not served. *See Dunlap*, 2016 WL 7391049, at *3. Section 1446(a) only requires a defendant to file in the district court a notice of removal containing the grounds for removal, "together with a copy of all process, pleadings, and orders *served* upon such defendant." (emphasis added). To require Purina to remove on the basis of a complaint with which it had not been served would run contrary to these requirements.

Moreover, the rules regarding removal jurisdiction in cases arising under CAFA support Purina's position. CAFA "reflects Congress's desire for broad diversity jurisdiction over class actions." *Hargett*, 854 F.3d at 965 (citation omitted). Under 28 U.S.C. § 1332(d)(7), class citizenship must be determined as of the date of the pleading giving rise to federal jurisdiction, which here is the original Petition alleging a class of Missouri "residents." Pet. ¶ 87; 28 U.S.C. § 1332(d)(7) ("Citizenship of the members of the proposed plaintiff classes shall be determined . . . as of the date of filing of the complaint or amended complaint . . . indicating the existence of Federal jurisdiction."); *Hargett, LLC*, 854 F.3d at 967 ("[T]he concept of redefining a class to trigger the local-controversy exception seems to violate § 1332(d)(7), which says that for purposes of the local-controversy exception, class citizenship must be determined as of the date of the pleading giving federal jurisdiction.").

## II.   REMOVAL OF THE PETITION IS PROPER UNDER CAFA

There is no question that this Court properly exercises jurisdiction over the Petition, and as stated in Purina's Notice of Removal, the Petition clearly establishes each and every element under CAFA. *Grawitch*, 750 F.3d at 959. Indeed, Plaintiffs do not even attempt to argue that CAFA jurisdiction over the Petition is inappropriate. Regardless, as set forth below, there is no basis for the Court to remand the Petition.

### A.   The Petition Invokes Federal Subject Matter Jurisdiction

Plaintiffs do not challenge Purina's statements of jurisdiction relating to the minimal diversity pleaded in the operative Petition and required under CAFA.

Accordingly, for the reasons stated in Purina's Notice of Removal, minimal diversity is met. *See* Notice of Removal 3-5.

Plaintiffs half-heartedly assert that Purina's Notice of Removal does not adequately demonstrate that the aggregate amount in controversy exceeds $5 million, but even Plaintiffs cannot (and do not) legitimately demonstrate that is not the case. Pls' Mem. 9-11. To the contrary, Purina's Notice of Removal relies on Plaintiffs' own allegations of damages and demonstrates all that is required of it – a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). "[T]he removing party's burden of describing how the controversy exceeds $5 million constitutes a pleading requirement, not a demand for proof." *Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 (8th Cir. 2013) (citation and internal quotation marks omitted). Based on Plaintiffs' request for relief on behalf of themselves and a class of "thousands" of "Missouri residents" who purchased any of the fourteen challenged products over a five-year period, Purina plausibly demonstrated that the amount in controversy exceeds $5 million.[4] Pet. ¶¶ 87, 89, 143-144.

---

[4] Moreover, Plaintiffs – perhaps purposefully – ignore their own allegations relating to punitive damages and attorneys' fees. While Purina disputes Plaintiffs are entitled to any such damages, those damages are properly considered in determining the amount in controversy under CAFA. *Raskas*, 719 F.3d at 888; *Pirozzi v. Massage Envy Franchising, LLC*, 938 F.3d 981, 984 (8th Cir. 2019) ("When the notice of removal plausibly alleges that the class might recover actual damages, punitive damages, and attorneys' fees aggregating more than $5 million, then the case belongs in federal court."). Plaintiffs cannot have it both ways – they cannot ignore their requests for punitive damages and attorneys' fees for purposes of staying out of federal court and seek them when it is convenient to do so.

Nevertheless, if there is any doubt, the attached declaration from Purina makes it clear that the amount-in-controversy exceeds the statutory minimum of $5 million because Purina's revenue from the sales of the number of products over the past five years for which Plaintiffs seek a full refund exceeded $5 million. *See* **Exhibit D**, Declaration of Lori Williams, ¶ 3. Accordingly, the requisite amount in controversy is established. *See Dart Cherokee*, 574 U.S. at 89; *Ippert v. Schwan's Home Serv., Inc.*, 2011 WL 839654, at *2 (E.D. Mo. Mar. 7, 2011) (evidence that removal is proper "may be presented to the Court in opposition to a Motion to Remand, and need not be attached to the Notice of Removal").

Original jurisdiction exists under 28 U.S.C. § 1332(d)(2).

### B.  CAFA's Home-State Exception Does Not Require Remand

Plaintiffs contend that this Court must decline jurisdiction under the Home-State Exception because, relying on the allegations of the FAP, two-thirds or more of the proposed plaintiff class are citizens of Missouri. But, as set forth in Section I above, the operative pleading for evaluating CAFA jurisdiction is the Petition, and Plaintiffs cannot met their evidentiary burden of establishing that two-thirds or more of the proposed class of Missouri residents are Missouri citizens. *See* Pet. ¶ 87.

Recognizing that CAFA's exceptions are "narrow" and that "CAFA reflects Congress's desire for broad diversity jurisdiction over class actions," the Eighth Circuit has expressly found that "resident" does not mean "citizen" in considering whether the two-thirds requirement under Section 1334(d) applies. *Hargett*, 854 F.3d at 964-966 (district court erred in finding that "merely alleging a proposed class of Arkansas

- 13 -

residents was sufficient to satisfy §1334(d)(4)"). Instead, "sound evidence" is required to show citizenship (i.e., physical presence and intent to remain), and plaintiffs "are not free to rest on guesswork." *Id.* at 966. Accordingly, Plaintiffs' bare allegation that the putative class is composed of "Missouri residents" is insufficient to meet their burden.

Plaintiffs have not shown that at least two-thirds of the class they seek to represent includes Missouri citizens with "sound evidence." To meet their burden of proof of "sound evidence," Plaintiffs are required to come forward with statistical proof establishing that they have met the two-thirds requirement. *Hood v. Gilster-Mary Lee Corp.*, 785 F.3d 263, 266 (8th Cir. 2015) (rejecting application of the Home State Exception because the record did not include "any sample, sampling methodology, or other indication of a disciplined approach" showing the two-thirds requirement was met); *Barricks v. Barnes-Jewish Hosp.*, 2012 WL 1230750, at *2 (E.D. Mo. Apr. 12, 2012) (merely alleging a class of "Missouri patients" was insufficient to show that two-thirds of the class were Missouri citizens); *Westerfeld*, 621 F.3d at 823. Plaintiffs have failed to come forward with any evidence whatsoever here and, accordingly, have failed to meet their burden of establishing that the Home State Exception applies.

None of the authority cited by Plaintiffs contradicts this conclusion. For example, in *In re Sprint Nextel Corp.*, the Seventh Circuit found that a class of "Kansas residents," even limited to those who had a Kansas cell phone number, received a cell phone bill at a Kansas mailing address, and who paid a fee applied to all long-distance calls in Kansas was insufficient to prove that the proposed class satisfied the two-thirds requirement of the Home-State Exception. 593 F.3d 669, 676 (7th Cir. 2010); *see also Schwartz v.*

*Comcast Corp.*, 2006 WL 487915 (E.D. Pa. Feb. 28, 2006) (simply alleging a class of "residents" or "property owners" does not meet the two-thirds requirement of the exception); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1165-66 (11th Cir. 2006) (same).

### C. CAFA's Local Controversy Exception Does Not Require Remand

The Local Controversy Exception requires the same elements as the Home-State Exception, plus a showing that "the principal injuries were incurred in the state in which the action was filed." *Atwood v. Peterson*, 936 F.3d 835, 839 (8th Cir. 2019) (citing 28 U.S.C § 1332(d)(4)(A)). Even if Plaintiffs were able to establish the requirements set forth in Section II.B. above, they cannot establish that this case is "a truly local controversy – a controversy that uniquely affects a particular locality to the exclusion of all others." *White Knight Diner*, 2018 WL 398401, at *3 (quoting Senate Report No. 109-14, at 39 (2005)). Plaintiffs' lawsuit concerns alleged trace levels of glyphosate in fourteen products that not only are sold nationwide, but are manufactured at manufacturing plants outside of Missouri, with ingredients sourced nationwide. In addition, Plaintiffs' claims relate directly to pet food labeling requirements, the safety of pet food, and, specifically, the presence and disclosure of glyphosate residue in food products, all of which are governed by federal law. No matter how Plaintiffs style their claim, whether glyphosate residue is "safe" and allowable in pet food products requires interpretation of federal law.[5] Indeed, the primary legal question raised by this lawsuit is

---

[5] Specifically, the FDA permits food to contain trace amounts of glyphosate residue at appropriate safe levels determined by the EPA through a comprehensive scientific review. *See* 21

whether Plaintiffs are entitled to use Missouri consumer protection law to establish standards for glyphosate residue levels in food that are different than those set by the federal agency charged with making that determination and, accordingly, whether Purina's labeling of its pet food product can be deceptive if it is fully compliant with federal standards. That question is plainly governed by federal law and falls squarely within the purview of the EPA and FDA. Accordingly, it is not "a truly local controversy." *See Pirozzi v. Massage Envy Franchising, LLC*, 938 F.3d 981, 983 (8th Cir. 2019); *cf. Been v. Kliethermes*, 2020 WL 2064043, at *3 (E.D. Mo. Apr. 29, 2020) (the prices charged by a single location of a local dry cleaner was a local controversy).

## CONCLUSION

For the forgoing reasons, Plaintiffs' Motion to Remand should be denied.

---

U.S.C. § 301 *et seq*. The tolerance for glyphosate residue in animal feed is established by EPA regulation at 400 parts per million, a level *far* below the level Plaintiffs allege are in Purina's products. 49 C.F.R. § 180.364.

- 16 -

Respectfully submitted,

THOMPSON COBURN LLP


By: */s/ Booker T. Shaw*

    Booker T. Shaw, #25548MO
    Amanda J. Hettinger, #55038MO
    Kristen E. Sanocki, #67375MO
    One U.S. Bank Plaza, Suite 2700
    St. Louis, Missouri 63101
    (314) 552-6000 (telephone)
    (314) 552-7000 (facsimile)
    bshaw@thompsoncoburn.com
    ahettinger@thompsoncoburn.com
    ksanocki@thompsoncoburn.com


MAYER BROWN

    Keri E. Borders, #1954015CA, *pro hac vice*
    Dale J. Giali, #150382CA, *pro hac vice*
    350 South Grand Avenue, 25th Floor
    Los Angeles, CA 90071
    Tel: (213) 229-9500
    kborders@mayerbrown.com
    dgiali@mayerbrown.com


*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 21st day of May, 2020, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to the following:

Daniel Orlowsky
Orlowsky Law, LLC
7777 Bonhomme Avenue, Suite 1910
St. Louis, Missouri 63105
dan@orlowskylaw.com

Adam M. Goffstein
Goffstein Law, LLC
7777 Bonhomme Avenue, Suite 1910
St. Louis, Missouri 63105
adam@goffsteinlaw.com

*Attorneys for Plaintiffs*

                                                               */s/ Booker T. Shaw*